**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| John Wesley Hightower,<br><br>Plaintiff,<br><br>vs.<br><br>Savannah River Remediation LLC,<br><br>Defendant. | Case No.: 1:13-cv-03558-JMC-PJG<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff, John Wesley Hightower, complaining of the Defendant herein, would respectfully allege as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff is a black male and a citizen and resident of Aiken County, South Carolina.

2.     The Defendant, Savannah River Remediation LLC ("SRR") is a company organized in Delaware and which conducts business in Aiken County, South Carolina; where it maintains facilities and offices, agents, servants and employees.  Defendant SRR is a contractor with the United States Department of Energy that performs services at the Savannah River Site ("SRS"), where the Plaintiff is currently employed.

3.     This action arises under Title VII of the 1991 Civil Rights Act and amendments thereto; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; and the laws of the State of South Carolina.

1

4.    Plaintiff has exhausted his claims at the administrative level and has received proper notice from the Department of Justice via the Equal Employment Opportunity Commission and this action is timely brought.

5.    Jurisdiction exists pursuant to 28 U.S.C. § 1331, which gives the District Court original jurisdiction over any civil action authorized by law to be commenced by any person to recover damages under any act of Congress providing for the protection of civil rights.

6.    Venue lies within the Aiken Division pursuant to 28 U.S.C. § 1391, because the Defendant's principal office is located in this judicial division and most of the events giving rise to this claim occurred in Aiken County, within the Aiken Division.

## FACTUAL ALLEGATIONS

7.    Plaintiff has worked at the Savannah River Site since January, 1985 and he has been employed by SRR since July, 2009.

8.    Until he was demoted from his position on January 16, 2013, Plaintiff's job title was Tank Farm, Projects and ETP Training Lead; where he maintained good job performance. As a Training Lead, Plaintiff had a supervisory role over several SRR employees.

9.    On November 14, 2012, Plaintiff attended a meeting with H-Tank Farm personnel to discuss opportunities for improvement ("OFI") that were identified by the Facility Evaluation Board ("FEB") which had surveyed SRR from November 5th through 14th, 2012.

10.    During the meeting, Plaintiff discussed the OFIs with the personnel present, which included several white male employees under Plaintiff's supervision.  Mike Walls ("Walls"), a white male who worked under Plaintiff's supervision, became angry and began directing profanity at Plaintiff in a hostile manner.  Plaintiff told Walls that he would not discuss

2

the matter with him while he was behaving in this manner.  At this point, Walls grabbed his coat and approached Plaintiff, stood over Plaintiff, and continued to curse at Plaintiff and berate him. At this point, Walls grabbed his coat and stalked over to Plaintiff, and he continued his angry tirade while looming over Plaintiff in a threatening manner.

11.    Jeff Becker ("Becker"), a white male who was the project lead under Plaintiff's supervision, escorted Walls out of the meeting.  Walls continued to use profanity and slammed the door on his way out.

12.    At the start of this same meeting, Becker told the Plaintiff that he had lost credibility by "Dancing with the Aiken Stars," in which Plaintiff was dancing with a white female.[1]  Becker also told Plaintiff that he would not be able to lead his "team" at SRR, which appeared to be racially motivated.  At least one week prior to this meeting, Becker informed the Plaintiff that he saw the Plaintiff and dance partner (white female) in the newspaper.

13.    Becker told Plaintiff that he intended to back "his people", Mike Walls and others, concerning the OFIs, despite the fact that Plaintiff was their supervisor. Becker also said he didn't think Plaintiff would go out on leave for surgery while the team was angry with him. Also, Becker told Plaintiff that he and "his people" were planning a meeting with Lampley, because they did not want to work for Plaintiff after the Dancing with the Aiken Stars.

14.    Plaintiff was scheduled to take a half day of vacation on November 15 because he was to have surgery on November 16, 2012.

15.    Although his subordinates disagreed with him, Plaintiff was following the "path forward" that Plaintiff and his manager, Charles Lampley ("Lampley"), had developed for Plaintiff's team.

---

[1] "Dancing with the Aiken Stars" is an annual fundraising event in Aiken, South Carolina, that raises money for The Child Advocacy Center of Aiken County and The Community Medical Clinic of Aiken County.

16.     Plaintiff informed his manager, Charles Lampley, of the hostility that he experienced at the meeting and the need for corrective action.  Plaintiff also asked Lampley to inform Human Resources of the event by the close of business on November 15, 2012.

17.     Plaintiff had his surgery on November 16, 2012, and as a result, he was out of work on medical/disability leave through December 19, 2012.  Soon after Plaintiff went on leave, Walls, Becker and one other white employee met with Lampley and possibly others and proceeded to belittle the Plaintiff.  Plaintiff contacted HR about his concerns including that he may be moved; however HR indicated there was no issue and to not worry about the matter.

18.     On December 20, 2012, Plaintiff sent an email to Stephanie Franklin, the head of SRR's EEO department, explaining what had happened at the November 14, 2012 meeting and complaining of the discriminatory treatment.

19.     Later that morning, Plaintiff attended a meeting with Human Resources while he was still officially out[2], and he was told that he should apologize to Becker and Walls, despite the fact that they were his subordinates and they were the wrongful actors at the meeting, because Plaintiff needed to make his team happy.  Human Resources claimed it was a "management issue" but not a performance issue.

20.     After meeting with medical personnel that same day, Plaintiff was supposed to start with three days of work hardening[3] before resuming his normal schedule; however, he was subsequently informed by Lampley that he would not be allowed to complete this program and that he would have to take the rest of the year off.  Moreover, he was told that he must use his

---

[2] HR met with Plaintiff on December 20, 2012 prior to Plaintiff meeting with medical later that day to be cleared for work.

[3] Work Hardening is a program to recondition an employee to return to work.  In this instance, Plaintiff would work three half days until he was able to return to work full-time.

accrued vacation time and would no long be allowed to carry it over into the following year, even though this excess carry-over had already been approved back in November 2012.

21.     Plaintiff contacted OCR on or about December 27, 2012, and left a message, and he then met with the OCR manager on January 7, 2013.

22.     On December 20, 2012, Plaintiff became aware that Paul Shedd (white male manager over Lampley) and Lampley were having a meeting about him, despite the fact that he was still out of work on medical/disability leave and could not be present at the meeting. Plaintiff further learned that Becker scheduled the meeting and sent an invitation out to all SRR employees reporting to him, but the Plaintiff was not included on the invitation.  On January 3, 2013, SRR sent an email to Plaintiff again asking him to take all the blame despite the insubordinate actions of the white employees.  The next day on January 4, 2013, Plaintiff conveyed his concerns to Lampley and asked for a meeting which was set for approximately 1:00 p.m. on his return-to-work date of January 7, 2013.

23.     When Plaintiff returned to work on January 7, 2013, EEO confirmed they would be "investigating" Plaintiff's complaint.  That investigation continued through January 8, 2013, when Plaintiff was held at work until approximately 5:45 p.m. for questioning.  Plaintiff was told by Stephanie Franklin that he was to identify the person who told Plaintiff that HR was meeting about him while he was out on disability.  Franklin told Plaintiff that if he did not identify this person he could lose his job.

24.     Plaintiff attended a school board meeting on the evening of January 8 that began at 7:00 p.m., and Plaintiff suffered an anxiety attack soon after the meeting began and was taken to the emergency room.  As a result of the anxiety attack, Plaintiff was held out of work until January 14, 2013.

25.    When Plaintiff returned to work on January 14, 2013, Ted Myers (white male), Human Resource Manager, in the presence of Shedd and Lampley, presented him with a letter that said Plaintiff would be under a performance improvement plan.  It was not made clear to Plaintiff why the previously classified "management issue" had been suddenly reclassified as a "performance issue," especially since Plaintiff's subordinates created the issue in question by acting hostile and insubordinate.

26.    The following day, a revised letter was presented to Plaintiff that was retitled "Development Plan", however it was still unacceptable and improper.  Plaintiff agreed to sign the letter Shedd brought to him to verify receipt, but Plaintiff was adamant that he did not agree with the content of the letter.

27.    On January 16, 2013, Plaintiff was stripped of his responsibilities and Jeff Becker took over the Plaintiff's position as lead.  Plaintiff was put into a dead-end position with no upward mobility or promotional opportunities.  Plaintiff was also denied a pay increase that had been promised to him in November, 2012 prior to his surgery.  Further, Plaintiff's demoted position is lower ranking than before and requires him to support Becker.

28.    The white employees, including Becker and Walls, were successful in their coup of the Plaintiff and were supported by Shedd and other upper management, and they were actually promoted after their deplorable conduct in the November 14, 2012, meeting.  Plaintiff, who was professional and led his team according to the plan devised for them, was demoted and placed in a dead-end position.

**FOR A FIRST CAUSE OF ACTION**
**AGAINST DEFENDANT SRR**
**(Violation of Title VII - Race Discrimination)**

29.    The plaintiff realleges paragraphs 1 - 28 aforesaid.

30.     The demotion of the plaintiff, the adverse actions taken against him and the promotion of a lesser qualified white employee into his position, were disparate and discriminatory.  White employees of Defendant SRR that were similarly situated were not treated in the same manner as Plaintiff, which constitutes prohibited conduct under Title VII of the 1991 Civil Rights Act and amendments thereto and amounts to unlawful race discrimination.  Further, a climate of racial favoritism has existed and continues to exist at SRR where black employees are held to a different, higher standard of conduct and performance than their white counterparts.

31.     As a direct and proximate result of the actions of Defendant SRR, Plaintiff was demoted, has suffered loss of wages, a loss of earning capacity, a loss of promotional opportunities, as well as reputational loss and mental and emotional suffering. The plaintiff is entitled to an award of attorney's fees and costs as well as punitive damages.

### FOR A SECOND CAUSE OF ACTION
### AGAINST DEFENDANT SRR
### (Violation of Title VII- Retaliation)

32.     Plaintiff realleges paragraphs 1 – 31 aforesaid.

33.     Plaintiff made reports to his supervisors, SRR's EEO, and the Department of Energy's OCR, complaining of racial harassment and disparate treatment that he was experiencing at work.

34.     Defendant SRR failed to take appropriate action to remedy or address Plaintiff's reports.  Instead, the retaliatory treatment Plaintiff was experiencing became more severe.

35.     Plaintiff was demoted for pretextual reasons in retaliation for his reports of race-based discrimination.  Such action constitutes a violation of Plaintiff's rights under Title VII of the 1991 Civil Rights Act and amendments thereto.

7

36.    As a direct and proximate result of the actions of Defendant SRR, Plaintiff was demoted, has suffered loss of wages, a loss of earning capacity, a loss of promotional opportunities, as well as reputational loss and mental and emotional suffering. The plaintiff is entitled to an award of attorney's fees and costs as well as punitive damages.

**FOR A THIRD CAUSE OF ACTION
AGAINST DEFENDANT SRR
(Violation of the Family and Medical Leave Act)**

37.    Plaintiff realleges paragraphs 1 - 36 aforesaid.

38.    Plaintiff was a qualified individual under the FMLA and went on medical leave for a serious medical condition.

39.    While on FMLA leave, action was taken to demote plaintiff without just cause.

40.    Plaintiff was demoted within two weeks after his return from FMLA leave. The Plaintiff was not allowed to return to his job after returning from disability and officially removed two weeks later.  The reason given for Plaintiff's termination was false and pretextual as Plaintiff was terminated for exercising his rights pursuant to the FMLA.  Such demotion and retaliatory conduct was a willful and knowing violation of the FMLA.

41.    As a direct result and consequence of the willful violation of the FMLA by Defendant SRR, Plaintiff was placed in a dead-end job, lost his upward mobility, and a pay increase he was promised before he went out on leave.  He is entitled to back pay, front pay, liquidated damages, attorney's fees and costs and all other relief he may be entitled to under the FMLA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant SRR for all damages recoverable to him under Title VII, the FMLA and the common law as well as attorney's fees

8

and costs as provided by law.  Plaintiff also seeks punitive damages against Defendant SRR for

their willful violation of the law.

Respectfully Submitted,

J. LEWIS CROMER & ASSOCIATES L.L.C.

BY:＿＿＿s/Julius W. Babb,IV＿＿＿＿＿
Julius W. Babb, IV (#10500)
1522 Lady Street
Post Office Box 11675
Columbia, South Carolina 29211
Phone: 803-799-9530
Fax: 803-799-9533
Attorneys for Plaintiff

December 20, 2013
Columbia, SC

9