IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| John Wesley Hightower, | ) | C/A No. 1:13-3558-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Savannah River Remediation, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, John Wesley Hightower, filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.; against the defendant, Savannah River Remediation, LLC ("SRR"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 40.) Hightower filed a response in opposition (ECF No 52; Additional Attachments, ECF No. 53), and the defendant replied (ECF No. 60). Having reviewed the parties' submissions and the applicable law, the court finds that SRR's motion for summary judgment should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Hightower, to the extent they find support in the record. Hightower has worked for Savannah River Remediation, LLC or its contractual predecessors since 1985. Pursuant to a federal contract, SRR manages nuclear materials, including liquid waste, generated by the Savannah River Site, a facility owned by the United States Department of Energy. SRR accomplishes the processing and storage

of the nuclear materials in five different facilities, including two tank farms, a Defense Waste Processing Facility ("DWPF"), an Effluent Treatment Facility ("ETF"), and a Saltstone Facility. When SRR was awarded the contract to manage the liquid waste in 2009, it appointed Training Leads for each facility. Hightower, an African-American male, was appointed Training Lead for the DWPF. Following consolidation of SRR's operations, Hightower was promoted to Training Lead for "F" Tank Farm, "H" Tank Farm, ETF, Control Room Consolidation, and Projects, thus assuming responsibility for three former positions. In the new consolidated position, Hightower supervised approximately 15-16 employees, including Mike Walls and Steve Kolodziejczak, both white males. When they learned that Hightower was going to be their supervisor, Walls and Kolodziejczak rudely expressed displeasure to others at SRR, referring to Hightower as a "son of a bitch."

At some time after his promotion and assumption of additional responsibilities, Hightower sought a raise. Hightower was instructed to provide a written justification for his own salary increase, which typically is prepared by a manager rather than the employee. Hightower's supervisor, Paul Shedd, then sent the salary justification to the compensation department supporting a raise for Hightower. The increase was subsequently denied.

In early November of 2012, a routine operations evaluation identified some "opportunities for improvement" by Walls and Kolodziejczak with regard to requalification evaluation methods. On November 14, Hightower scheduled a meeting with Jeffery Becker regarding the evaluation results. Becker requested that other simulator employees be included. At the meeting, Kolodziejczak and Walls became upset, as they apparently perceived that Hightower was personally

criticizing them. Walls became very agitated, screamed and cursed at Hightower, and was ultimately escorted from the meeting by Becker.[1]

After the meeting Hightower contacted another supervisor, Charles Lampley, Sr., and reported Walls's conduct. The next day Hightower told Lampley he wanted to file a "corrective action" against Walls, which would initiate a disciplinary process, and also requested that Lampley contact the human resources department. Hightower was scheduled to be on medical leave commencing the next day to have surgery, and Lampley informed Hightower that they would discuss it when he returned to work.

On November 16, 2012, the day Hightower had neck surgery, Becker contacted Lampley and requested a meeting, at which Becker, Walls, and Kolodziejczak complained about Hightower's management style, which they claimed caused a stressful work environment. Lampley then contacted Ted Myers in the human resources department to inform him of the incident between Walls and Hightower at the November 14 meeting, the complaints the employees made against Hightower, and Hightower's request that corrective action be taken against Walls. Myers informed Lampley that any resolution to those issues would have to await Hightower's return from medical leave. A few days after his surgery, Hightower called and spoke with Michelle Elam and Lavoris Curry in SRR's human resources department and expressed concerns that his employees were complaining about him and had met with Lampley without Hightower being present. Curry responded that the issues would have to await Hightower's return.

When Hightower returned to work on December 20, he e-mailed human resources a summary of the events that occurred beginning November 14. He also met with Karen Jenkins in the EEO

---

[1] In their depositions, Lampley described Walls's behavior as "insubordination" and Becker characterized it as "inappropriate."



office. Hightower then with met with Lampley and Myers as previously scheduled. At that meeting, Lampley and Myers informed Hightower that he needed to apologize for the November 14 meeting and that his employees did not want to work for him anymore. They counseled Hightower on methods to improve his management style.

Additionally on December 20, Hightower spoke with Lampley about using the work-hardening program, which would essentially permit Hightower to ease gradually back into full days of work by using short-term disability leave. In addition, they discussed Hightower's plan to use and carry over unused excess vacation time, which had been approved prior to Hightower's medical leave. Lampley approved Hightower utilizing the work hardening program and the use of excess vacation time in combination, but retracted that approval the following day.

Lampley sent an e-mail on January 3, 2013 to Hightower purporting to summarize their December 20 discussion about the November 14 meeting. In the e-mail, Lampley expressly conditioned Hightower's continued employment on Hightower's apologizing to and improving his relationship with his employees. Hightower expressed discomfort with the e-mail, feeling that he was unjustly being compelled to apologize, and requested a meeting to clarify what he was expected to do.

Hightower returned to work on January 7, 2013, and met with the EEO the next day. Hightower's meeting with Lampley about the January 3 e-mail was postponed because of Hightower's pending EEO complaint. Hightower was out of work again from January 9-13 due to experiencing a panic attack. When he returned on January 14, Lampley presented him with a Performance Improvement Plan developed by Myers, with compliance with the Plan determinative of continued employment. After Hightower met with Lampley and Shedd regarding his concerns, they revised the document and presented it as a "Development Plan." Hightower signed to

acknowledge receipt of the Development Plan, but would not sign to indicate agreement with its content. SRR then demoted Hightower from Training Lead to Training Advisor for the stated reason that he would not indicate that he agreed with and would comply with the Development Plan.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Methods of Proof**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, he may establish his claims through direct proof of the alleged discrimination. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*) (abrogated on other grounds by Foster v. Univ. of Md.–E. Shore, 787 F.3d 243 (4th Cir. 2015)). Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant

Page 6 of 17



meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence



that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

C.    **Hightower's Claims**

    1.    Title VII

        a.    **Race Discrimination**

As an initial matter, the court finds that Hightower has not forecast direct proof of race discrimination. See Hill, 354 F.3d at 284-85 (stating that direct evidence includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision") (quoting Fuller, 67 F.3d at 1142). Although Hightower relies on a "mosaic theory" of direct proof, this theory has not been expressly endorsed by the United States Court of Appeals for the Fourth Circuit,[2] and, even if it were, the evidence upon which Hightower relies is insufficient to directly prove discriminatory animus. The pieces of the "mosaic" upon which Hightower relies in support of this theory fall far short of cumulatively demonstrating direct proof of race discrimination. (See Pl.'s Mem. Opp'n Summ. J. at 17, ECF No. 52 at 17.) Rather, such circumstances are precisely what McDonnell Douglas was designed to address.

Nor can he successfully utilize the McDonnell Douglas framework to show race discrimination. Generally, to show a *prima facie* case, a plaintiff must establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4)

---

[2] See, e.g., Giraldo v. City of Columbia, 47 F. Supp. 3d 430, 433-34 (D.S.C. 2014) (observing that no precedent in the Fourth Circuit has accepted the mosaic theory).



different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Hightower cannot satisfy the second element. Despite Hightower's vehement disagreement with his supervisors' assessment of his performance at the time they transferred him to the training advisor position, he cannot show that their opinion was not legitimately held.[3] In analyzing the element of satisfactory job performance, a plaintiff's performance is evaluated at the time of the alleged adverse action and courts have recognized that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans, 80 F.3d at 960-61). An employer's expectations of its employees are considered "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are *bona fide* expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

---

[3] Because SRR's proffered reason for Hightower's demotion is that he was not meeting expectations, the evidence as to the *prima facie* issue and the pretext prong of the McDonnell Douglas framework overlaps; therefore, the court addresses these issues together. See Warch, 435 F.3d at 516 (noting the flexibility of the McDonnell Douglas framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's performance] at different stages of the McDonnell Douglas framework").



Here, the record is replete with undisputed evidence that Myers, Lampley, and Shedd received numerous complaints about Hightower's management style from the employees he supervised and genuinely believed that it was creating problems. Whether this assessment was justified or accurate does not matter for purposes of the *prima facie* element requiring the plaintiff to show he was meeting his employer's legitimate expectations. Nor does it aid Hightower in showing that SRR's proffered reason for his reassignment was a pretext for discrimination. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' ") (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

Hightower argues that the positive comments about his leadership by former subordinate employees Rodney Bodifer and Wofford Brant may be used to show that his supervisors' proffered expectations were not legitimate. Here, however, all Hightower's evidence shows is that *some* of his employees liked working for him; the defendant indisputably was faced with complaints by others who did not. Their decision to address the discontent of the complaining employees is one that should not be second-guessed by a federal court. See DeJarnette, 133 F.3d at 298-99 (stating that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer" and that "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination") (internal quotation marks and citation omitted). Similarly, the recharacterization of the original Performance Improvement Plan as a "Development Plan" is not probative of any sham expectations on the part of Hightower's supervisors. Whatever it was called, Hightower cannot dispute that he refused to



adhere to it. Finally, while Hightower appears to argue that Shedd gave various reasons for the employees' complaints, he provides no evidence that Shedd did not honestly believe some action was required by Hightower to address them. Contrary to Hightower's argument, no reasonable jury could find based on the evidence presented that "the sudden alleged management issues arising after an excellent record . . . were exaggerated so as to cover up [an] improper racial motivation for Plaintiff's [demotion]." (Pl.'s Resp. Opp'n Summ. J. at 23, ECF No. 52 at 23.) There is simply insufficient evidence to suggest that race was a motivating factor in the decision of his supervisors to reassign him.[4]

### b.     Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). Claims of retaliation are also generally analyzed under the McDonnell Douglas burden-shifting framework. Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000).

---

[4] Moreover, Shedd was the decision maker who placed Hightower in the Training Lead position in the first place and Lampley is also African-American. As a matter of law, these facts create an inference of non-discrimination in the race context. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (indicating that "because [the supervisor] is the same person who hired [the plaintiff], there is a 'powerful inference' that the failure to promote her was not motivated by discriminatory animus") (Title VII gender discrimination); Demesme v. Montgomery Cty. Gov't, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd per curiam, 208 F.3d 208 (4th Cir. 2000); see also Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) (ADEA) ("When the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer, and the early resolution of this question need not be derailed by strict fealty to proof schemes."); Coggins v. Gov't of Dist. of Columbia, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Although Hightower argues that such inferences of non-discrimination can be tempered by other facts, he has not presented any here that reasonably suggest either Shedd or Lampley was motivated by Hightower's race.



Even assuming that Hightower can establish a *prima facie* case of Title VII retaliation, for the same reasons discussed above, the court finds that SRR has offered legitimate, non-retaliatory reasons for the demotion. In addition, to the extent Hightower alleges that he was denied work hardening and was forced to use vacation time (reversing his previously granted excess carryover) and that these actions constitute adverse actions, the court finds that SRR has offered legitimate, non-retaliatory reasons for these actions as well: SRR policies. Hightower was approved to carry over excess vacation time in November. (Hightower Dep. 211-212, ECF No. 53-1 at 113-14; E-mail Approving Carryover, ECF No. 53-8.) Further, on December 20, Lampley initially approved Hightower to use the work hardening program and excess vacation time *in combination* such that Hightower would use short-term disability for half the day and excess vacation leave for half the day. The next day Lampley retracted this approval, indicating that such a combination was not permissible under SRR's policy.[5] (Hightower Dep. 213-214, ECF No. 53-14 at 115-16; Ex. 5, ECF No. 53-1 at 158.) The record reveals that Hightower was granted an exemption to SRR's policy regarding forfeiture of his excess carry over vacation because SRR understood that he would be out on medical leave in November and December of 2012, rendering him unable to use his excess vacation. When SRR learned that Hightower was able to return to work from medical leave earlier than expected, Lampley ultimately provided Hightower with options under SRR's policies for combining his medical leave and his remaining vacation days, and Hightower elected to use some

---

[5] Thus, contrary to Hightower's allegations, the record does not reflect that he was denied approval to use the work hardening program; rather, upon advice of Human Resources and pursuant to policy, Lampley explained that Hightower could not combine the work hardening program and his vacation time to take entire days off of work. However, even assuming that Hightower was denied use of the work hardening program, for the reasons that follow, he has failed to demonstrate that the real reason for such alleged denial was unlawful retaliation.



of his excess vacation. (Hightower Dep., Ex. 5, ECF No. 53-1 at 158; Shedd Dep., 113-20, ECF No. 40-11 at 30-31; Lampley Dep., 109:22-115:19, ECF No. 40-8 at 30-31.)

Hightower has failed to demonstrate by a preponderance of the evidence that the proffered reasons for these actions were not SRR's true reasons, but were a pretext for retaliation. See Merritt, 601 F.3d at 294; see also E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 407 (4th Cir. 2005) (stating that once the defendant has met its burden of articulating legitimate, non-retaliatory reasons for adverse employment action, "the presumption of retaliation falls, and plaintiff bears the ultimate burden of proving that the defendant's non-retaliatory reason for the adverse employment action was pretextual"). To do this, Hightower must show that retaliation was the real reason for, or the but-for cause of, the challenged adverse action. See Foster v. Univ. of Md.–E. Shore, 787 F.3d 243, 252 (4th Cir. 2015) (stating that Nassar's but-for causation standard "does not demand anything beyond what is already required by the McDonnell Douglas 'real reason' standard" and concluding that "the McDonnell Douglas framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action"). At most, Hightower appears to suggest that the real reason for the alleged adverse actions—which he contends were taken in retaliation for engaging in Title VII protected activity—can be inferred by the timing of his reports and these actions.[6] Although such evidence can sometimes be sufficient to establish a causal connection for the *prima facie* case, the court finds that Hightower has failed to present sufficient evidence from which a reasonable jury could find the but-for cause of the alleged adverse actions was retaliation

---

[6] However, Hightower also argues that the adverse actions were motivated by his race and in retaliation for availing himself of his rights under the FMLA. Moreover, to the extent that Hightower relies on the same evidence that he uses in support of his pretext argument for his Title VII discrimination claim, the court notes that the majority of this evidence arose *prior* to his EEO complaints.



in violation of Title VII.  See Reeves, 530 U.S. at 148; Merritt, 601 F.3d at 294-95.  Therefore, SRR's motion for summary judgment should be granted as to this claim.

### 2. Family Medical Leave Act

As an initial matter and as pointed out by the defendant, the record does not support any allegation that Hightower availed himself of or sought leave pursuant to the FMLA; rather, the record unequivocally demonstrates that Hightower availed himself of the short-term disability program pursuant to company policy.  Thus, his allegations that the defendant violated the FMLA should fail on this basis.  However, even assuming that Hightower's medical leave was pursuant to the FMLA, for the reasons that follow, the defendant is entitled to summary judgment on these claims as well.

#### a. Retaliation

Hightower alleges that he was retaliated against for exercising his rights under the FMLA. The McDonnell Douglas burden-shifting framework also applies to FMLA claims of retaliation. Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006).  The court finds that for all the same reasons discussed above, even assuming Hightower can establish a *prima facie* case of FMLA retaliation, SRR has offered legitimate, non-retaliatory reasons for its actions and Hightower has failed to demonstrate by a preponderance of the evidence that the proffered reasons were not its true reason, but were a pretext for retaliation.  Stated differently, Hightower has failed to present sufficient evidence from which a reasonable jury could find the but-for cause of the alleged adverse actions were FMLA retaliation.  See Reeves, 530 U.S. at 148; Merritt, 601 F.3d at 294-95.  Therefore, SRR's motion for summary judgment should be granted as to this claim.



  **b.**  **Interference**

  To establish a *prima facie* case that Hightower's employer interfered with FMLA rights, a plaintiff must show: (1) that he was an eligible employee; (2) that his employer was covered under the FMLA; (3) that he was entitled to FMLA leave; (4) that he gave his employer adequate notice of his intention to take leave; and (5) that his employer denied him benefits to which he was entitled. See Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing Edgar v. JAC Prod., Inc., 443 F.3d 501, 507 (6th Cir. 2006)); see generally 29 U.S.C. § 2615(a)(1). Hightower appears to argue that SRR's interference stemmed from a denial of participation in the work hardening program.[7]  This program exists pursuant to company policy, and Hightower has failed to refute SRR's showing that the program is not guaranteed or protected by the FMLA. Hightower's reliance on 29 C.F.R. § 825.700 is unavailing.  Section 825.700 provides in relevant part: "An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA."  29 C.F.R. § 825.700(a).  However, "[c]ourts have interpreted 29 C.F.R. § 825.700 as not creating a federal cause of action under the FMLA to enforce voluntary employer policies which provide benefits exceeding those required by the FMLA."  Lusk v. Virginia Panel Corp., No. 5:13CV079, 2014 WL 1340767, at *1 (W.D. Va. Apr. 4, 2014) (citing Rich v. Delta Airlines, 921 F. Supp. 767, 773 (N.D. Ga. 1996) ("Section 825.700 does not, and could not, however, create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA.  The Department of Labor has no regulatory power to rewrite, and clearly

---

[7] As noted above, it does not appear that Hightower was actually denied participation in the work hardening program; however, even assuming he was, SRR is nonetheless entitled to summary judgment on this claim.



did not rewrite, the FMLA in such a manner.")). Specifically, in support of this conclusion, the court in Rich explained as follows:

> The purpose of [§ 825.700] is to ensure that the FMLA is not interpreted to abrogate any currently existing employee-benefit plan. Therefore, if an employer has a plan or program more generous than the FMLA, then the FMLA will not supersede or reduce those more generous benefits which the employer has chosen to provide. In essence, the regulation is merely a truism which emphasizes that employers are legally bound by valid contractual agreements made with their employees regarding employment benefits. An employer's contractual obligations are distinct, however, from the regulation at issue and the FMLA itself.

Rich, 921 F. Supp. at 773 (cited in Lusk, 2014 WL 1340767, at *2). Thus, Hightower cannot show he was denied any benefit or rights under the FMLA.

## RECOMMENDATION

For the foregoing reasons, the court recommends that SRR's motion for summary judgment (ECF No. 40) be granted.

                                                                      _____
                                                                      Paige J. Gossett
                                                                      UNITED STATES MAGISTRATE JUDGE

November 24, 2015
Columbia, South Carolina


*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).